DALE WASHINGTON SBN 169008
9550 WARNER #250
FOUNTAIN VALLEY, CA 92708
714 593 2317
washington.dale@gmail.com

Attorneys for Defendant
Binh Tay Foods Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA

| | |
|---|---|
| MAI A. NGUYEN, an individual and doing business as MSJ FOODS, Inc., MSJ FOODS, Inc. <br><br>      Plaintiffs, <br><br> Vs. <br><br> CONG TY CO PHAN THUC PHAM BINH TAY, a business entity, form unknown; THAI SON, a business entity, form unknown, and DOES 1 to 10, inclusive <br><br>     And related cross-action | CASE NO.  SACV 10-01558 CJC (MLGx) <br><br> Hon. Marc L. Goldman, Magistrate Judge <br><br> DEFENDANT'S SETTLEMENT CONFERENCE STATEMENT; DECLARATION OF DALE WASHINGTON WITH COLOR PHOTOS EXHIBITING THE PRODUCTS WITH MARKS <br><br> Date:  April 11, 2012 <br> Time:  9:30 a.m. <br> Courtroom: 9B |

## 1. INTRODUCTION:

There are no secrets in this case which should not be published to the Court and opposing counsel's in their effort to resolve the case at mediation.  Binh Tay is an instant noodle manufacturer located in Saigon, Vietnam.  It was started out as a private company in the 1950's and nationalized in 1975.  It was subsequently privatized as a corporation in or about 2005 and the stock purchased by the current owners a year or so prior to this lawsuit.

At issue is a brand used by Binh Tay since the 1960's called "LaBoDe" which translates "the Bhudda's leaf." Binh Tay used and registered LaBoDe with two of a certain variety of tree leaf on a bright yellow background (See noodle pack photo attached to declaration of Washington). The mark is well known in Vietnam and has secondary meaning being from Binh Tay in the Cholon district of Saigon. Cholon is the "China Town" in Saigon, to this day is the largest market trading center for Vietnam. Cholon is an ancient trading post - it is the place in Southeast Asia where some Roman Coins were found.

This court is familiar with the Vietnam War which culminated in defeat for South Vietnam in 1975; At that time, Vietnamese connected to the US Government arrived in Orange County in significant numbers. Less well known is a border conflict between China and Vietnam in 1979 which resulted in a backlash against the ethnic Chinese – many of them fled in boats during 1980's resulting in a much larger and poorer influx. This Vietnamese and Chinese were more united by the events that forced them out and tended to settle in concentrated areas which support a rich restaurant, supermarket and services area which mimics their homeland. One of these areas is Central Orange county and one of the products which they brought with them was the LaBoDe instant noodle. Defendant will prove that LaBoDe was here with the refugees long before someone registered it and Defendant's assignor may have engaged in trademark squatting, a hot topic because of China's first to register law. See, http://www.chinadebate.com/2012/02/chinas-trademark-squatters/. The registration is limited to "soy sauce, soybean paste, whole soybean sauce" which presents no chance of confusion with Defendant's instant noodle products. (see, MSJ Soypaste Jar photo attached to declaration of Washington).

The Binh Tay LaBoDe brand is well known by a substantial percentage of this ethnic group, and has secondary meaning in the ethnic population born in Vietnam. To serve this group, Binh Tay exported instant noodles to the USA in modest quantities – the most popular product was the LaBoDe vegetarian instant noodle in its distinctive two green leaves on a bright yellow pack.

**2.   CURRENT CONTROVERSY:**

2

In 2010 Binh Tay found noodle products bearing LaBoDe and the two leafs in ethnic supermarkets, along with the soy paste product and brought the issue of first use to the attention of Plaintiff.  Plaintiff and Defendant then agreed to discuss the issue when Defense counsel returned from overseas but instead of sorting it out – Defendant returned to a law suit.  Since that time discovery has revealed Plaintiff's total income from all products is only $5,000 or so per year – in other words, the soy paste is a very small product.  Defendant's noodle exports to the USA are also a very low margin product – sales are under $100,000 per year, and profit perhaps 10%.  Upon learning that it was "soy paste vs. instant noodles" and a very small volume at that – Defendant terminated specialist counsel and elected to proceed with outside general counsel to try to settle the case.  Defendant has demanded only their attorney fees rather than some commercial resolution for a case in which neither side can prove damages so – there will be no winner.

The issues for determination in this case are:

1. Can a phrase "the Bhudda's leaf" be trademarked at all?  Defendant believes it is an ancient term with religious significance such as "the rosary beads" a phrase which cannot be owned without making it distinctive and attaching it to a product or service.

2. Does Binh Tay's first use selling instant noodles preclude Plaintiff's registration for soybean paste and sauce?

3. Does "soy sauce, soybean paste, whole soybean sauce" have any substantial risk of confusion with instant noodles?  Of course not.  Sauce does not compete with instant noodles for consumer purchases.   The evidence will show that Binh Tay makes noodles and has never produced nor sold soy products in the USA (or in Vietnam for that matter).

4. Is the familiarity by the ethnic Vietnamese population strong enough to support the 9th Circuit "Famous Mark Exception" which will allow Defendant to register the true

LaBoDe mark with the distinctive two leaves and either invalidate or coexist with the soybean mark?

### 5. **LEGAL FRAMEWORK:**

Binh Tay has three different ways to establish its own rights in LaBoDe:

First use – Binh Tay will show it was on supermarket shelves in 1990 and for this reason should be given rights in the mark. The ethnic enclave aspects provides a different route for Binh Tay called "the Famous Mark exception" used for ethnic markets recognizing homeland brands. In *Grupo Gigante v. Dallo & Co.*, 391 F.3d. 1088 (9th Cir. 2004). In *Grupo Gigante*, the 9th Circuit was asked who had priority of use between a large Mexican grocery store chain that had long used the mark "Gigante" (but <u>not</u> in the U.S.)[1], and a small American chain that was first to use the mark in the U.S. (in a locality where shoppers were familiar with the Gigante mark). *Id.* at 1091. While acknowledging the territoriality principle as established law, the 9th Circuit carved out a narrow exception. The Grupo rule is First, the mark must have attained secondary meaning, which refers to a mark's actual ability to trigger in consumer's minds a link between a product and the source of that product. Second, where the mark has not before been used in the American market, the court must be satisfied by a preponderance of the evidence, that a *substantial* percentage of consumers in the relevant American market are familiar with the foreign mark. The relevant market is where the defendant uses the alleged infringing mark. While stressing Defendant will prove it was in commerce in the USA prior to the registration, the Grupo case provides important precedent for homeland recognition of products and simple fairness. Finally, the essence of infringement is substantial risk of confusion – and there is none in this soy bean paste v. instant noodle case.

---

[1] Unlike LaBoDe but informative in many respects.

4

## 6. WITNESSES AND EVIDENCE:

Defendant will produce witnesses from the ethnic supermarket business in Little Saigon who purchased merchandised and sold Binh Tay LaBoDe products from the inception, long before the soybean paste mark was applied for, abandoned, and re-registered.  These witnesses and other evidence will prove:

 MSJ is not a significant supplier in the market for reasons independent of Defendant's instant noodles such as operating out of their home and not investing in their business.

 There is no chance of confusion between instant noodles and soybean paste.

 Binh Tay is the LaBoDe noodle product in the refugee's minds and should be permitted to register its distinctive LaBoDe mark, two green leaves and bright yellow background.

MSJ cannot prove confusion or damage or any infringement.

## 7. NON ATTENDANCE OF PRINCIPALS DUE TO EXTENUATING CIRCUMSTANCE:

As set forth in the affidavit of Giau in the court file, Binh Tay is owned by Le Thi Giau and her son, Nguyen Le Phuc Toan, both of whom are Vietnamese citizens residing in Vietnam.  They are also wife and step son respectively for Defense Counsel Washington who has obtained and filed with the court authority to resolve the matter on their behalf.  Defendant apologizes for this request however will give every good faith effort to resolve the case, and thanks His Honor for finding time for settlement conferences.

Respectfully submitted,

Dale Washington

Attorney for Defendant and cross-complainant

## DECLARATION OF DALE WASHINGTON:

1. I am an attorney and officer of the court, licensed to practice in California and the Federal Courts venued therein. I make these statements under penalty of perjury:

2. Attached are two color photos. One is the MSJ Soypaste exhibited on the www.vietnamesesupermarket.com website and the other is a Binh Tay LaBoDe instant noodle product.

3. I make these statements under penalty of perjury this 3/30/2012 in Fountain Valley, California

Dale Washington
Declarant

