DALE WASHINGTON SBN 169008
9550 WARNER #250
FOUNTAIN VALLEY, CA 92708
714 593 2317
washington.dale@gmail.com

Attorneys for Defendant
Binh Tay Foods Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA

| | |
|---|---|
| MAI A. NGUYEN, an individual and doing business as MSJ FOODS, Inc., MSJ FOODS, Inc. <br>     Plaintiffs, <br><br> Vs. <br><br> CONG TY CO PHAN THUC PHAM BINH TAY, a business entity, form unknown; THAI SON, a business entity, form unknown, and DOES 1 to 10, inclusive <br><br> And related cross-action | CASE NO. SACV 10-01558 CJC (MLGx) <br><br> Hon. Cormac J. Carney, Judge <br><br> RULE 16 PRE TRIAL CONFERENCE STATEMENT <br><br> Date: April 16, 2012 <br> Time: 3:00 p.m. <br> Courtroom: 9B |

1. FACTUAL BACKGROUND:

Vietnamese refugees came to the USA during the 70's and 80's and settled in concentrated areas, the largest here in Orange County. They are predominantly Bhuddists and were familiar with the Lá Bồ Đề noodles from Vietnam, a vegetarian product for Bhuddists. One can walk through all of the large Vietnamese supermarkets today and find products saying "Lá Bồ Đề" some direct photocopies of Defendant's distinctive two leafs on yellow background, one example is Exhibit 8 hereto, a jar of soy sauce in the shape of Nestle's famous Maggi soy sauce.

1

Plaintiff, MSJ sells soy sauce and/or soy paste under the trade name "Lá Bồ Đề" with a single leaf (ref, Exhibit 7) and Binh Tay sells vegetarian instant noodles with the term "Lá Bồ Đề" and two leaves (ref, Exhibit 4). A brief explanation of the meaning of Bồ Đề is important, because vegetarian Bhuddists in the Vietnamese community are the relevant market for these products. According to scripture, Bhudda received enlightenment while seated beneath a certain tree - the Bodhi tree. A large Bodhi leaf is often placed behind Bhudda in art (See, Exhibit 1, from the Bồ-Đề Vegetarian restaurant in Westminster). In Vietnamese, the same word "Bo de" describes this variety of tree or the Bhudda, depending on the context (reference, Exhibit 3 certified translation). In terms of business volume – Defendant has had steady but small sales of instant noodles and according to Plaintiff's discovery response they make a few thousand dollars in profit annually. In other words this is a very small case which should be resolved without the consumption of court resources.

2. <u>FACTS AND EFFECT OF THE FALSE STATEMENT IN PLAINTIFF'S APPLICATION FOR REGISTRATION</u>

The Applicant claimed first use in 1993, registered, abandoned and then re-registered her mark just prior to the sale to Plaintiff herein in July 2004. The new registration shows that the PTO Examiner rejected the application based on the similarity between the two phrases and that they included leaves and both sold soy products Exhibit 2 shows that the PTO examiner rejected the at-issue mark for likelihood of confusion and sent it back, specifically stating:

> "The dominant elements of the marks in question are the same, namely "Bo De and the design element of a leaf." The goods of both the applicant and the registrant are similar if not identical in that they comprise sauces, namely, soy sauce. The applicant appropriated the dominant portions of the registered mark. The overall similarities among the marks and the goods are so great as to create a likelihood of confusion. " Exhibit 2 Pg BT55.

Vi Đai Bồ- Đề is Vietnamese for "Flavor of Bodhi" (Reference Exhibit 3 certified translation) , Plaintiff's assignor knew (indeed each Vietnamese on this case knows) the translation was

materially false. The Applicant chose to argue there was no confusion between his soy sauce and the other soy sauce. More importantly, he adopted and submitted the false translation in his sworn application:

> "Second, "Vi Đai Bồ- Đề" *actual meaning and is being translated by the registrant as* "seasoning extracted from the mulberry tree" while "Lá Bồ Đề" is translated as "Leaf of the Bhudda Tree." Both of which are different in meaning and usually not confused by the other (Ref Exhibit 2 BT46 resubmittal by Phong Chan, registrant (italics added)).

Since the translation was materially false, the registration at-issue in this case is based on a fraud on the PTO. In addition to not being able to cure fraud by transferring the registration – Plaintiff was actually part of the fraud because it was submitted 3/9/2004 as part of the escrow for Plaintiff's purchase of the business from Phong. We can see this because of the date (escrow closed July 5, 2004) and also because the transaction escrow company (Apex Escrow) is cited as the recipient of the registration (reference, Exhibit 2 last page). Thus, Plaintiff must have known, but anyway knowledge was legally imputed to her. During the time the escrow holder is the dual agent of the parties, the knowledge of the escrow holder regarding matters within the same escrow is imputed to both parties to the escrow. <u>Boswell v. Reid, 199 Cal. App. 2d 705, 712, 19 Cal. Rptr. 29 (3d Dist. 1962)</u> (interpretation of instructions as to whether condition satisfied imputed to both parties).

Therefore, Defendant respectfully requests the initial hearing in this case concern the false statement to the TPO upon which the at-issue registration was issued.

3. **AN APPLICATION TO REGISTER A MARK WHICH INCLUDES NON-ENGLISH WORDING MUST INCLUDE A STATEMENT TRANSLATING THE WORDING:**

3

An application to register a mark that includes non-English wording must include a statement translating the wording. 37 C.F.R. 2.32(a) "(9) If the mark includes non-English wording, an English translation of that wording;" According to the PTO, "Knowledge of the meaning of non-English words in marks is necessary for proper examination, because a non-English term is regarded in the same way as its English equivalent in determining descriptiveness, requiring disclaimer, and citing marks under §2(d) of the Act (see TMEP §§1207.01(b)(vi) and 1209.03(g)). The examining attorney " should require the applicant to submit a statement of translation/transliteration, under 37 C.F.R. 2.61(b)." Comparing Phong's translation to the true meaning (Exhibit 3) we can see that it was not true – Like the Vi Đai Bồ- Đề mark he was trying to distinguish – Phong misrepresented the translation to the PTO examiner in the 3/9/2004 submittal. Thus his application was fraudulent.

4. **THE REGISTRATION SHOULD BE INVALIDATED BASED ON FRAUD IN THE APPLICATION ALTERNATIVELY PLAINTIFF'S RELIEF SHOULD BE DENIED BASED ON UNCLEAN HANDS:**

A material false statement in the application renders the trademark invalid (see, *In re Bose Corporation*, 91 USPQ2d 1938 (Fed. Cir. 2009), "a trademark is obtained fraudulently when the applicant or registrant knowingly makes a false material representation with the intent to deceive the USPTO." The evidentiary standard is clear and convincing. See Grand Canyon West Ranch, LLC v. Hualapai Tribe, 88 USPQ2d 1501, 1508 (TTAB 2008).

In this case, the PTO raised concerns about the non English words along with basic concerns about similarities. In order to overcome the examiner's concerns about confusion in the mark and similarity in the products, the applicant responded "Vi Đai Bồ- Đề" *actual meaning and is being translated by the registrant as* "seasoning extracted from the mulberry tree." This is clearly false based on the actual certified translation of this phrase (checking both Chinese and Vietnamese, which is attached as Exhibit 3. The correct translation is "Flavor of Bodhi."

This was material enough for the applicants to lie about it, and we can see that it materially changes the meaning – they have inserted a mulberry tree and seasoning extracted – taking the focus away from Bhuddism and vegetarian food.  This fraud in the application triggers two similar outcomes.  The less severe one is the denial of this court's protection to Plaintiff based on the doctrine of unclean hands.  The doctrine of unclean hands is recognized as a valid defense in an appropriate trademark infringement or unfair competition case, and "can constitute a bar to some or all of the relief sought." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:44 (4th ed. 1999). "A court may deny injunctive relief based on the defense of unclean hands 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" Estate of Lennon v. Screen Creations, Ltd., 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (quoting Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1383 (6th Cir. 1995) (quoting Novus Franchising, Inc. v. Taylor, 795 F. Supp. 122, 126 (M.D. Pa. 1992))).

"What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts." Project Strategies Corp. v. National Communications Corp., 948 F. Supp. 218, 227 (E.D.N.Y. 1996) (quoting Republic Molding Corp. v. B.W. Photo Util., 319 F.2d 347, 349-50 (9th Cir. 1963)), aff'd 168 F.3d 1320 (Fed. Cir. 1998); see also Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) ("While equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.") (citations and internal quotation marks omitted).

The same rule applies in Caliornia state law:  A plaintiff's inequitable conduct in connection with the matter in controversy provides a complete defense to the plaintiff's action. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal. App. 4th 436, 446.) Conduct is sufficient to constitute unclean hands if it "violates conscience, or good faith, or other equitable standards of

1  conduct." (*Id.*) The doctrine of unclean hands also applies to bad faith conduct by the plaintiff in connection with the matter in controversy. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56.) The defense is based upon misconduct in the particular transaction or connected with the subject matter of the litigation. (*Wilson v. S.L. Rey, Inc.*, *supra*, 17 Cal. App.4th at 244.) This registration was denied based on similarity, so the applicant responded by submitting a false translation to get it by the PTO – clearly misconduct in this particular transaction which should void the registration for fraud.

5. **THE MARKS AND THE PRODUCTS ARE NOT CONFUSING PURSUANT TO THE SLEEKCRAFT FACTORS:**

The Court can see from Plaintiff's complaint that their registration is for "Soy Sauce, Soy Paste and whole soybean sauce" *all things Defendant has never produced*. At this point it would be helpful for the Court to review the color pictures of the products on the shelves: Attached as Exhibits 4 & 5 showPlaintiff's product, which is vegetarian instant noodles. Exhibit 6 is an old magazine ad showing Plaintiff's mark has not changed for many years. Exhibit 7 is Defendant's product on the shelf in a supermarket and finally Exhibit 8 is an example of another knock off – someone using Defendant's exact logo on soy sauce, just mirror imaging the two Bodhi leafs.

The 9th Circuit uses the eight-factor Sleekcraft test to analyze the likelihood of confusion question in all trademark infringement cases, both competitive and non-competitive. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.1979) (Sleekcraft was used more recently in Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394 (C.A.9 (Cal.), 1997))

The eight factors are as follows:

(1) strength of the mark;  In this case "Lá Bồ Đề" on its own translates "leaf of the Bodhi tree" and is a religious phrase like "rosary beads" which standing alone is not entitled to protection. Defendant however has always used the mark with the bright green Bodhi leaves on striking yellow background and in this way has achieved sufficient recognition to be knocked off as shown by Exhibit 8.

(2) proximity of the goods;   As the trier of fact knows and as shown in Exhibits 5 and 6, instant noodles are in a different section of the market than soy bean paste and sauce.  So they are in the same market (Vietnamese and Chinese supermarkets) however in different sections on different shelves.

(3) similarity of the marks; The marks have some similarity in the leaf, being for vegetarian products and using the name Lá Bồ Đề.  However the impact is quite different from the Exhibit 4 or 5 yellow and green (or the knock off, Exhibit 7) compared to the Exhibit 6 Plaintiff's mark.

(4) evidence of actual confusion;  There is no evidence of actual confusion.

(5) marketing channels used;   The companies use the same channel - Vietnamese and Chinese supermarkets.

(6) type of goods and the degree of care likely to be exercised by the purchaser;  It is not believable that anyone confuses a pillow pack of instant noodles with a jar of soy bean paste.

(7) defendant's intent in selecting the mark; Defendant will show actual original artwork from the 1960's in Vietnam, and will produce witnesses who purchased it in Southern California prior to 1993.

(8) likelihood of expansion of the product lines. Not a factor in the current case.

These factors are to be considered in reaching a decision on the issue of likelihood of confusion. However, "[n]o mechanistic formula or list can set forth in advance" the variety of elements that comprise the market context from which likelihood of confusion must be determined. Restatement (Third) of Unfair Competition § 21, comment a (1995). The Sleekcraft court noted that this "list is not exhaustive" and "[o]ther variables may come into play depending on the particular facts presented." Sleekcraft, 599 F.2d at 348 n. 11.

Based on these factors Plaintiff's mark for soy sauce and paste is simply not likely to be confused with Defendants very distinctive mark for instant noodles.

6. DEFEDANT'S MARK HAS ACQUIRED 'SECONDARY MEANING' WITHIN THE RELEVANT POPULATION PURSUANT TO THE GRUPO GIGANTE HOLDING:

The Lá Bồ Đề (distinctive Bhode tree leaves on bright yellow background) instant noodles have been in continuous use in Vietnam through the Vietnam War and the nationalization in 1975 and privatization around 2005, and up to the present. The influx of Vietnamese refugees into the USA has lead to ethnic enclaves such as "Little Saigon" here in Orange County. Plaintiff will be able to show first use – that Lá Bồ Đề instant noodles were on Caifornia supermarket shelves in 1990 and for this reason should be given rights in the mark, and a narrow exception known as "the Famous Mark exception" for situations in which an ethnic group recognizes a brand from their homeland (see, *Grupo Gigante v. Dallo & Co.*, 391 F.3d. 1088 (9th Cir. 2004). In *Grupo Gigante*, the 9th Circuit was asked who had priority of use between a large Mexican grocery store chain that had long used the mark "Gigante" (but <u>not</u> in the U.S.)[1], and a small American chain that was first to use the mark in the U.S. (in a locality where shoppers

---

[1] Unlike LaBoDe but informative in many respects.

were familiar with the Gigante mark). *Id.* at 1091.  While acknowledging the territoriality principle as established law, the 9th Circuit carved out a narrow exception. The Grupo rule is First, the mark must have attained secondary meaning, which refers to a mark's actual ability to trigger in consumer's minds a link between a product and the source of that product. Second, where the mark has not before been used in the American market, the court must be satisfied by a preponderance of the evidence, that a *substantial* percentage of consumers in the relevant American market are familiar with the foreign mark.  The relevant market is where the defendant uses the alleged infringing mark.  While stressing Defendant will prove it was in commerce in the USA prior to the registration, the Grupo case provides important precedent for homeland recognition of products and simple fairness.  Exhibit 8 knockoff was presented so the court could see that Defendant's combination of two green leaves and on a bright yellow background – an exact copy of Defendant's instant noodle pack (Exhibits 4, 5 & 6).  The court can infer that Plaintiff's claims that their FDA approval and brand name are important to the relevant community are belied by this knock off - Defendant's distinctive green and yellow Lá Bồ Đề is a "famous mark" in Vietnam which came over with the refugees in 1975.

7. **DEFENDANT HAS NEVER STATED IT HAD A REGISTERED MARK; DEFENDANT'S COUNTER CLAIM IS DEFENSIVE IN NATURE:**

This case resulted from Defendant going from Government to private ownership and as part of that process new owners reviewing the trademarks.  In this connection Defendant notified PLAINTIFF and others that their use of Lá Bồ Đề was subject to challenge.  Exhibit 8 knockoff was presented so the court could see that Defendant does have a copying problem but not of the Lá Bồ Đề phrase. Defendant's copying problem relates to the distinctive two green Bodhi leaves and on a bright yellow background and Exhibit 8 can be observed as an exact copy of Defendant's instant noodle pack (Exhibit 4) which can be seen in the ancient advertisement (Exhibit 6). Plaintiff's soy paste is not a competitive problem except to the degree Plaintiff claims to have first use, and to have originally come up with it rather than copy others, whether it be the Vi Đai Bồ- Đề  or more likely, Defendant's ancient claim to Lá Bồ Đề  in the sale of

9

vegetarian instant noodles. Defendant desires that Plaintiff's mark be invalidated based on the patent fraud in the application so that Plaintiff may register its distinctive mark and stop blatant copying such as the court may observe in Exhibit 8

8. WITNESSES AND EVIDENCE PLANNED FOR TRIAL:

Documents will be what was exchanged in discovery and if it is an issue Binh Tay's legal status in Vietnam (Binh Tay exported to the USA through importers). A key piece of evidence will be Plaintiff's registration (exhibit 2 to this brief) and a certified translation showing fraud in the application (exhibit 3 to this brief)

Defendant's initial list of witnesses:

1. Toan Nguyen Le (stockholder, Binh Tay) 30 minutes
2. Le Thi Giau (controlling stockholder, Binh Tay) 30 minutes
3. Phu Tran, Food Importer 30 minutes (first use & secondary meaning)
4. Duc Tran, owner Viet Wah Food Import 30 minutes (first use & secondary meaning)
5. Hue Than, Vice President, Ventura Foods 30 minutes(first use & secondary meaning)
6. Kim-Anh T. Nguyen, Little Saigon shopper 30 minutes(first use & secondary meaning)
7. Mai Nguyen (Plaintiff) 1 hour
8. Dale Washington, (attorney for Binh Tay)

RESPECTFULLY SUBMITTED,

DALE E WASHINGTON

ATTORNEY FOR PLAINTIFF

Declaration of Dale Washington:

I am an attorney licensed to practice before the Courts of California, and any Federal Court venued therein. I make these statements under penalty of perjury and as an officer of the court:

1. Attached as Exhibit 1 hereto is a true and correct copy of a business card from the Bồ Đề vegetarian restaurant on Beach Boulevard just North of McFadden (the old Kmart Store). I picked it up so the court could see the cultural association of the Bồ Đề leaf with Bhuddism and vegetarian food.
2. Attached as Exhibit 2 hereto is a true and correct copy of Plaintiff's application for its mark produced during discovery in this case.
3. Attached as Exhibit 3 hereto is a true and correct copy of a certified translation of the two marks Lá Bồ Đề and Vi Đai Bồ Đề which were necessary to reveal the fraud in the two applications to the PTO. I made Plaintiff's counsel aware of the fraud as

soon as I figured it out as a non Vietnamese speaker because I believe he was involved in the MSJ escrow and may have a conflict arising out of the fraud.

4. Attached as Exhibit 4 hereto is a true and correct copy of a current Lá Bồ Đề instant noodle pack. Exhibit 5 hereto is a true and correct copy of a photo of Lá Bồ Đề on a shelf in a supermarket.

5. Attached as Exhibit 6 hereto is a true and correct copy of an old advertisement for Lá Bồ Đề from 1990 which shows the mark has not changed over the years.

6. Attached as Exhibit 7 hereto is a true and correct copy of a photo of Plaintiff's soybean paste on the shelf in a supermarket which shows their claims of "same color" and "confusion" are not founded in reality.

7. Attached as Exhibit 8 is a true and correct copy of a knock off soy sauce using Lá Bồ Đề name and color scheme which I obtained from an internet advertisement for a Little Saigon Supermarket.

I make these statements under penalty of perjury this 10th Day of April in Fountain Valley, California